UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMALA ENIGWE, | ) | CASE NO.  5:09cv179 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| | ) | |
| KENT STATE UNIVERSITY, et al, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

On January 26, 2009, *pro se* plaintiff Amala Enigwe filed this diversity action against Kent State University Center for International Comparative Programs, Alan Coe, Dr. Roger Reed, Dr. Rubin, and Judith Carroll. In the complaint, plaintiff alleges the defendants did not make reasonable efforts to secure her acceptance to the internship program of her choice. She seeks monetary damages. Ms. Enigwe also filed an Application to Proceed *In Forma Pauperis*. That Application is granted.

**I. Background**

Ms. Enigwe contends that in 2005, she inquired about an internship opportunity with the United Nations through Temple University in Philadelphia, Pennsylvania. She was referred to Kent State University in Kent, Ohio where she spoke with Alan Coe, the Assistant Director of the Center for International Comparative Programs. He informed her of the requirements and qualifications of the program. She indicates that she was told the University could not guarantee placement in a particular internship, and that the Program Director, Roger Reed, had to give final approval of any placement. She states she told the director of the

programs that she wished to work for Dr. Thandika at the United Nations Institute of Research and Social Development. She acknowledges she was reminded that there was no specific guarantee she would receive an internship with Dr. Thandika, but indicates the directors assured her that they would try to accommodate her preference. After further discussing the details of the programs, she again was informed that "it could not be guaranteed for any prospective intern to get exactly what position he or she wishes, but the department . . . would guarantee to do their very best to secure a meaningful internship for any prospective interns, and that they 'do make every effort to match available internships with students' [sic] background, experience, and interest.'" (Compl. at 2.) Despite these disclaimers, Ms. Enigwe was convinced she would get the internship and obtained a loan in the amount of twenty thousand dollars to fund it, "relying on the word given to her by the program directors." (Compl. at 3.)

Ms. Enigwe did not get the internship with the United Nations. Sometime after this initial meeting, she went abroad. She does not provide information concerning this trip and it is unclear whether her travel was related to a program at Kent State University. Thereafter, she discovered that she did not get the internship she desired. She claims Mr. Coe, Dr. Roger and Dr. Rubin did not make sufficient effort to secure the internship. She learned Dr. Reed, the program director had been ill. She contends that Dr. Rubin, who she describes as the "overall director," did not attempt to salvage the situation by completing Dr. Reed's work. (Compl. at 3.) She claims Kent State University "intentionally misled [her] into enrolling in the internship program knowing full well that it had no intention of meeting Plaintiff's expectations . . . ." (Compl. at 4.) She also contends that Mr. Coe, Dr. Roger, and Dr. Rubin "goaded her into taking out a hefty loan in the amount of twenty thousand ($20,000) dollars with the assurance that they would at least try to get Plaintiff the position she wanted at the United Nations . . . ." (Compl. at 4.) She

2

contends this is a breach of contract.

While Ms. Enigwe was abroad, she received a letter from Kent State employee Judith Carroll, informing her that a medical bill had been received and payment had been authorized. Ms. Enigwe does not indicate why the bill was sent to the University or why the University paid it. She contends that she did not give permission for the University to open her mail in her absence. She asserts a claim for invasion of privacy.

## II. Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to § 1915(e).

### A. The Complaint Fails to State a Claim for Breach of Contract

As an initial matter, Ms. Enigwe fails to set forth facts which reasonably suggest the defendants breached a contract with her. A contract is formed between a student and a university when a student enrolls at the university, pays tuition, and attends classes. *Behrend v. State*, 55 Ohio App.2d 135, 139 (1977). The terms of the contractual relationship are found in the

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

university catalogue and handbook supplied to students. *Leiby v. Univ. of Akron*, No. 05AP-1281, 2006 WL 1530152, * 4 (Ohio App. 10 Dist. June 6, 2006.) Ms. Enigwe maintains that defendants breached a contract with her by failing to obtain or put forth a significant effort to obtain the internship she wanted.

"[A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party perform[s] its contractual obligations; the other party fail[s] to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffer[s] damages." *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108 (1995). In this case, there is no clear indication that a contract existed between Ms. Enigwe and Kent State University, or if there was a contract, that getting her the internship was a term of that agreement. She indicates that she spoke with the Assistant Director to receive information about the program's requirements and qualifications. She states she believed she would get the internship and took out a loan to fund her expenses. There is no indication that she applied for and was accepted into the program, or that she paid tuition and attended classes in connection with this program. There is no suggestion in the complaint that the parties mutually decided to pursue this matter beyond the interview stage.

Presuming that Ms. Enigwe was accepted into the program, there is no indication that the parties agreed to obtain the particular internship she requested. She admits she was told there was no guarantee that she would get the internship she desired or that, if accepted, her choice would be approved by Dr. Reed. She nevertheless construed their statement to "do their very best to secure a meaningful internship for any prospective interns, and that they 'do make every effort to match available internships with students' [sic] background, experience, and interest'" as a guarantee that the University would pursue all avenues to secure the internship she

4

requested. (Compl. at 2.) Ms. Enigwe does not suggest that the University catalogue or handbook contained any guarantee of this nature. There are no allegations in the pleading which reasonably suggest that obtaining the internship was more than a unilateral expectation by Ms. Engiwe, or that the University intended to be bound by such a term. Her claim for breach of contract must be dismissed.

### B. The Complaint Fails to State a Claim for Invasion of Privacy

Ms. Enigwe also asserts a claim for invasion of privacy. The tort of invasion of privacy is divided into four separate torts, including: "(1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166 (1985). Ms. Enigwe claims Ms. Carroll opened a letter containing a medical bill. She also claims she suffered embarrassment and humiliation "since the personal feminine medical information contained in the letter was shared indiscriminately among males who were working under the auspices of Kent State University, both in the United States and abroad." (Compl. at 4.) Based on these assertions, it appears Ms. Enigwe may be attempting to assert either the first or second type of tort claim.

In order to establish a claim for invasion of privacy based on intrusion into private affairs, Plaintiff is required to show a wrongful intrusion into her private activities in a manner that outrages or causes mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Browning v. Ohio State Hwy. Patrol,* 151 Ohio App.3d 798, 814, *2003 Ohio-1108,* citing, *Sustin v. Fee*, 69 Ohio St.2d 143, 145 (1982). The intrusion must be "highly offensive" to a reasonable person. *Id.* The plaintiff must be able to demonstrate that the area intruded into was

private and that the intrusion itself was unwarranted and offensive or objectionable to a reasonable person. *Id.* Ms. Enigwe alleges few facts on this issue. She states only that a medical bill was sent to the University and payment was tendered on her behalf. There is nothing in the complaint to suggest that the intrusion itself was unwarranted and offensive.

Similarly, Ms. Enigwe claims Kent State University caused her embarrassment and humiliation by sharing the information indiscriminately among males. To state a cause of action for public disclosure of embarrassing private facts, plaintiff first must allege that there was publicity; the disclosure must be of a public nature, not private. *Killilea*, 27 Ohio App.3d at 166. "Publicity" means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to "publication" as that term of art is used in connection with liability for defamation as meaning any communication by the defendant to a third person. *Id.* at 166-67. Second, the facts disclosed must be those concerning the private life of an individual, not his public life. There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public, such as matters of public record about his birth or marriage date, or matters that the plaintiff leaves open to the public eye, such as kissing his spouse in public. Finally, the matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities. In the present case, Ms. Engiwe states without explanation that she received a letter from Ms. Carroll indicating her medical bill had been paid. From that she concludes that other individuals may have seen the bill as well. There are no facts which reasonably suggest that the information was communicated to the public at large, or to "so many persons that the matter must be regarded as public knowledge. Her claim for invasion of privacy must be dismissed.

## III. Conclusion

For all the foregoing reasons, Plaintiff's Application to Proceed *In Forma Pauperis* is granted and this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

**IT IS SO ORDERED**.

Dated: April 22, 2009

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[2] 28 U.S.C. § 1915(a)(3) provides, in pertinent part:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.